NO
CV30

N/S/I

FEE PAID

SEAN OWENS
thelaawcenter@gmail.com
1055 West 7th Street, 33rd Floor
Los Angeles, CA 90017
Telephone:     323.412.8516
Facsimile:     None
*Pro Per*



FILED
CLERK, U.S. DISTRICT COURT

AUG 2 9 2022

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

**SEAN OWENS,**

        *Plaintiff,*

        v.

**EXPERIAN INFORMATION
SOLUTIONS, INC.,**

**EQUIFAX INFORMATION
SERVICES, LLC,**

**EDUCATIONAL CREDIT
MANAGEMENT
CORPORATION** (agent of ECMC
Group).

        *Defendants.*

8:22-CV-01601-FWS(JDEx)

**Case No.**

**Civil Action Complaint**
for Violations of the:

1. Fair Credit Reporting Act -
   ("**FCRA**") - 15 U.S.C. §§1682s-2(b),
   623(a)(1)(A) and 623(a)(1)(B), 1681c,
   1681e, 1681i, 1681n, 1681o, *et seq.*

2. Fair Debt Collection Practices Act –
   ("**FDCPA**") – 15 U.S.C. § 1692 *et seq.*

3. Fed. R. Civ. P. 9(b)

4. Telephone Consumer Protection Act -
   ("**TCPA**") - 47 U.S.C. § 227 *et seq.*

*[A Jury Trial is Demanded]*

## CIVIL ACTION COMPLAINT

    NOW COMES Plaintiff, Sean Owens, (herein "Plaintiff" or "Owens"), who files this

Complaint against the defendants Educational Credit Management Corporation ("ECMC" hereafter),

Experian Information Solutions Inc. ("Experian" hereafter), and Equifax Information Services, LLC

("Equifax" hereafter). The defendants Experian and Equifax will be referred to as the defendant

Credit Reporting Agencies ("CRAs" hereafter) within this Complaint. The defendant ECMC will be referred to as the defendant "furnisher" hereafter.

### [JURISIDICTION AND VENUE]

1.    Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p), and 28 U.S.C. §1331.

2.    Venue in this District is appropriate under 28 U.S.C. §1391(b)(2) because Defendants conduct business within the state of California, one of the defendants' principal place of business is domiciled in the state of California, and the Plaintiff is a citizen within the jurisdiction of the Court based on his educational and employment activities within the state of California.

3.    Supplemental Jurisdiction of this Court is conferred by 28 U.S.C. § 1367(a) because "any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

### [PARTIES]

4.    Plaintiff is a natural person and a *"consumer"* as defined by 15 U.S.C. §1692a(3), and 15 U.S.C. §1681a(c).

5.    Plaintiff's contacts with all named Defendants in this matter occurred via electronic communication and the defendants' use of the instrumentalities and channels of interstate commerce.

6.    Further, Plaintiff has suffered harm as a direct result of ECMC's knowing and repeated violations of both the FDCPA and the TCPA. Plaintiff has also suffered harm as a direct result of the defendant CRAs knowing and repeated violations of the FCRAS.

7.    Defendant, ECMC, whose parent company is ECMC Group, is a foreign Non-Profit Corporation established in the state of Minnesota and registered to conduct business in California through its registered agent, CT Corporation System, 330 N. Brand Blvd. Ste 700, Glendale, CA

91203. Defendant is formerly known as *"Zenith Education Group."* (https://www.zenith.org/). ECMC operates in the areas of student loan bankruptcy management and loan collection. ECMC is a debt collection agency as defined under the FDCPA 15 U.S.C. § 1692(a)(6).

     **8.**   ECMC, at all times pertinent to this Complaint, utilized one or more automated dialing systems to initiate the unlawful (*and non-consented to*) telephone collection calls to Plaintiff's residential landline and/or cellular telephones, and to the homes of Plaintiff's parents in Detroit, Michigan, and the plaintiff's peers' landline and/or cellular telephones. Such unlawful calls were placed by the defendant utilizing an artificial or prerecorded voice message left on the recipient's landline and/or cellular telephone devices.

     **9.**   ECMC, at all times pertinent to this Complaint, used the instrumentalities of interstate commerce and/or the mails for the principal purpose of which was intended for the collection of any debt(s) allegedly owed by the plaintiff.

     **10.** Defendant, Experian Information Solutions, Inc. (hereafter "Experian"), a Delaware company, is a foreign For-Profit Corporation registered to conduct business in the State of California through its registered agent, CT Corporation System, 330 N. Brand Blvd. Ste. 700, Glendale, CA 91203.  Defendant, Experian, has its corporate headquarters domiciled at 475 Anton Blvd., Costa Mesa, CA 92626. Defendant is a *"consumer reporting agency,"* as defined in 15 USC § 1681a(f) and is regularly engaged in the business of receiving, assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in 15 U.S.C. §1681a(d).

     **11.** Defendant, Equifax Information Services, LLC (hereafter "Equifax"), established in the state of Georgia, is a foreign For-Profit Corporation authorized to conduct business in the State of California through its registered agent, CT Corporation System, 330 N. Brand Blvd. Ste. 700, Glendale, CA  91203. Defendant is a *"consumer reporting agency,"* as defined in 15 USC § 1681a(f)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and is regularly engaged in the business of receiving, assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

**[FACTS SUPPORTING RELIEF]**

**12.**   Plaintiff incorporates the foregoing paragraphs 6 through 9 as though the same were set forth at length herein. The subsequent facts set forth herein, paragraphs 13 through 33, are related to ECMC as a *"furnisher"* of consumer credit file information submitted to the CRAs.

**13.**   Plaintiff attended graduate school in the state of Michigan during the years 2003 through 2006. During his studies, he took out sixteen student loans ("SLs/SL") to cover the cost of his education with the private lender, Citibank. All sixteen SLs were originated and funded by Citibank and the plaintiff signed promissory notes with Citibank evidencing the debt owed to Citibank as the original creditor for each student loan. Plaintiff's last student loan was disbursed in the year 2006 when Plaintiff completed his graduate studies.

**14.**   At no time after the last SL disbursement was made in May 2006 and between the years 2006 through 2015, did the plaintiff make any arrangements (i.e., deferments, forbearances, standard repayment plans, loan rehabilitation) -- due to a Chapter 7 bankruptcy discharge in 2006 -- for repayment of the SLs with any business entity, governmental agency, guaranty agency, loan servicing center, or non-profit organization as Citibank was the only servicer of the student loans known to the plaintiff.

**15.**   At no time between the years 2015 through 2020 has the plaintiff signed any promissory note evidencing a debt owed to the defendant, ECMC, or any business entity, governmental agency, guaranty agency, loan servicing center, or non-profit organization. Specifically, the plaintiff did not open any new student loan accounts or enter into any contractual service agreements, or otherwise, with any business entity on April 24, 2015, or at any time prior to or after the latter date.

**16.**   Factually, student loans are not serviced while a student is actively enrolled in school

because such loans are automatically in a deferred status. As such, excluding Citibank, ECMC nor any business entity originated or serviced the plaintiff's sixteen SLs during the years 2003-2020.

**17.**  Student loans, as per the Consumer Financial Protection Bureau (CFPB), go into default after three (3) missed payments. (https://www.consumerfinance.gov/). For a loan made under the *William D. Ford Federal Direct Loan Program* or the *Federal Family Education Loan Program*, a borrower is considered to be in default if no scheduled student loan payments are made for at least 270 days (nine months). (studentaid.gov/manage-loans/default); (consumerfinance.gov/).

**18.**  In the absence of a bankruptcy discharge and after Plaintiff's six (6) month grace period ended for the subject student loan accounts ("SLAs") in 2006, a date of first delinquency ("DOFD") occurred on or about December 2006 because no repayment arrangements, forbearances, or any additional deferments had been requested by the plaintiff from the original creditor, Citibank. The same facts as to the latter statement apply to the years 2007 through 2012, and 2012 through 2020. Furthermore, the alleged SLAs went into default status effective August 2007.

**19.**  Plaintiff applied for a mortgage loan and auto loans on or about January 2020, October 2020, and November 2020 respectively but was denied for reasons related directly to the adverse, inaccurate, erroneous and re-aged credit student loan account information furnished by ECMC and reported or published by the defendant CRAs. The practice of "re-aging" an account is an industry-wide but illegal practice of changing the DOFD to keep negative and adverse information on a consumer's credit report longer.

**20.**  Plaintiff was compelled to pull his credit report from Experian on August 30, 2020 and from Equifax on October 21, 2020 as a result of being denied credit to identify the issues affecting Plaintiff's creditworthiness. Plaintiff discovered the defendant furnisher disregarded the plaintiff's prior dispute(s) and continued to transmit credit file information to the CRAs containing the same erroneous, inaccurate, and re-aged student loan account information that was specifically contested on

1  December 1, 2019.

2  **21.**  The defendant furnisher, ECMC, willfully and knowingly submitted Plaintiff's consumer

3  credit files containing false and erroneous information related to the sixteen Citibank SLAs to the

4  defendant CRAs despite having been provided notice of the plaintiff's prior dispute related to the

5
6  inaccurate and discrepant information contained therein.

7  *Analysis*

8  **22.**  Some of the credit files submitted by the defendant furnisher to the defendant CRAs

9  reflect that the SLAs were opened on 4/24/2015. However, no record or promissory note exists

10  between the plaintiff or the furnisher (i.e., ECMC) that bears the plaintiff as a signatory for any of the

11  SLAs. Also, there is no evidence that ECMC originated, guaranteed, or serviced the SLAs in question

12  as of the date April 24, 2015, or any time prior to or after the year 2006. Therefore, it is not possible

13  for the furnisher to report to the defendant CRAS that any of the reported SLAs were opened by the

14  plaintiff on April 24, 2015, notwithstanding the fact the dates conflict with each other.

15
16  **23.**  No record of re/payment in the form of personal checks issued from the plaintiff's bank

17  account, credit card payments, cashier's checks or money orders exist that would demonstrate the

18  plaintiff had knowledge of such SLAs and directly made payment(s) on any of the accounts listed by

19  the furnisher as evidence of indebtedness or that a service agreement existed between the parties.

20
21  **24.**  The furnisher consistently failed to provide original *charge-off*, *DOFD* and *default* dates

22  within its credit files to the defendant CRAs for each of the SLAs as an attempt to *re-age* each

23  account to continue reporting the false and inaccurate information.

24  **25.**  Specifically, the defendant furnisher supplied outdated, inaccurate, and adverse SL

25  account information to the defendant CRAs that antedates Plaintiff's credit report by more than seven

26  (7) years. The antedated account information appears on the plaintiff's August 30, 2020 and October

27  21, 2020 credit reports.

28

**26.** The SLAs' original opening dates with Citibank occurred prior to April 24, 2015 or more than 8 years of what is being reported. Hence, what is reported is, undeniably, false information. As such, the DOFD or subsequent "default" status on the SLAs occurred much sooner than what the defendant furnisher is reporting to the CRAs. Therefore, the reporting of the adverse SLAs to the CRAs far exceeded the statutory period of 7.5 years and such information should have been corrected and deleted by ECMC based on the plaintiff's dispute with the defendant CRAs in December 2019.

**27.** ECMC acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, representatives, and insurers in connection with the facts pled in this Complaint.

### *Allegations - TCPA*

**28.** ECMC ("furnisher") violated the federal consumer protection laws under the TCPA described herein as they relate to Plaintiff as follows:  repeated unlawful debt-collection telephone calls to telephone numbers, including landline and cellular telephone numbers, that were never provided to the furnishers, nor in which the furnishers were authorized by the plaintiff to contact him at said telephone numbers; other unauthorized and unlawful collection activities and communications from the defendant furnishers to Plaintiff in violation of the Telephone Consumer Protection Act. Such unlawful violations occurred within the statutory period set forth under 28 U.S.C. § 1658(a).

### *Allegations - FDCPA*

**29.** At all relevant times herein, ECMC was an entity engaged, by use of the mails and telephone, in the business of collecting a debt allegedly owed by the Plaintiff that qualifies as a "debt," as defined by 15 U.S.C. §1692a(5). The furnisher regularly attempted to collect debts alleged to be due, and therefore is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### *Duties of Furnishers of Information*

**30.** Plaintiff incorporates the foregoing paragraphs 6 through 9, and 12 through 29 as though

the same were set forth at length herein.

**31.** While it is understood that no private right of action exists for a consumer under 15 U.S. Code §§1681s-2(a)(1)(2), ECMC has a duty to "not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." The defendant furnisher knew as early as 2019 that the information it was supplying to the CRAs was inaccurate, re-aged and factually erroneous based on Plaintiff's prior formal dispute with the CRAs and the defendant CRAs *did* notify ECMC of Plaintiff's dispute in December 2019. However, ECMC negligently and willfully failed to perform its duties.

**32.** Despite Plaintiff's prior disputes with the CRAs in December of 2019, and after the CRAs notified ECMC of Plaintiff's dispute, ECMC continued to furnish information with actual knowledge of errors and deficiencies related to the sixteen SLAs. The furnisher had a duty to correct and delete the errors based on the facts contained within the plaintiff's 2019 dispute. Instead, ECMC continued to negligently and willfully supply erroneous information to the CRAs up through October 2020.

**33.** ECMC had a duty under 15 U.S. Code §§1681s-2(b), after being notified by the defendant CRAs of Plaintiff's dispute on December 1, 2019, to conduct a reasonable investigation and to subsequently discontinue the transmission of the erroneous credit file information, and to have the CRAs permanently block or delete the reporting of such information pertaining to the sixteen, outdated SLAs. Wherefore, ECMC's actions were negligent and willful.

### ***Duties of Credit Reporting Agencies***

**34.** Plaintiff incorporates the foregoing paragraphs 10 and 11 as though the same were set forth at length herein.

**35.** The tactics used by the defendant CRAs are illegal under the FCRA and 15 U.S. Code § 1681c(a)(4)(5) and (c)(1) which states:

**(a) Information Excluded from Consumer Reports**. "Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information:

**(4)** Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.
**(5)** Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

**(c) Running of Reporting Periods.**
**(1)** In General - The 7-year period referred to in paragraphs (4) …of subsection (a) shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action,."

**36.** The Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681(a)(1)(A) requires that any disputed information on a credit report be investigated by the credit reporting agency within 30 days and corrections and/or removal of such information occur within thirty (30) days. The defendant CRAs did not remove the disputed student loan account information even knowing that it was erroneous and after the plaintiff disputed the erroneous and inaccurate information four times between the years' 2017 and 2019.

**37.** The reporting of the erroneous credit information on Plaintiff's credit report has negatively reflected upon the plaintiff's credit and repayment history, financial responsibility as a debtor and Plaintiff's creditworthiness. The erroneous SL account information was furnished by ECMC and reported by Experian and Equifax. The actions by all the named Defendants to this Complaint resulted in the plaintiff having a lower credit score, a loss of creditworthiness and Plaintiff's credit reputation, and exacerbated Plaintiff's damages.

**38.** Because of the contrived and egregious actions by all named Defendants, Plaintiff has suffered damages all to Plaintiff's detriment and loss.

**39.** Plaintiff's credit reports created by Experian and Equifax have been reviewed by prospective credit grantors, and the inaccurate information furnished by ECMC and continually republished by the CRAs on Plaintiff's credit reports has damaged Plaintiff's credit rating, lending availability, and Plaintiff has been denied credit.

**40.** As a direct and proximate cause of the defendant CRAs' negligent and/or willful failure to comply with the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*., Plaintiff has suffered emotional damages, undue stress, anxiety, embarrassment, and other related impairments to the enjoyment of life all due to the CRAs failure to perform a reasonable re/investigation and correct the disputed errors in Plaintiff's credit reports.

**41.** The defendant CRAs willfully, knowingly, and complicitly allowed ECMC to *re-age* the "Date Opened" status for each student loan account on a month-to-month basis.

**42.** The CRAs willfully, knowingly, and cooperatively engaged in acts of deceit with the defendant furnisher to manipulate Plaintiff's credit file data being submitted on the credit reporting calendars within Plaintiff's credit reports to reflect account activity that was falsely contrived.

**43.** Re-aging accounts by changing the information is misleading. (*Toliver v. Experian Info. Solutions, Inc*., 973 F. Supp. (S.D. Tex. 2013), ('Date of Status' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions")); (*Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988)), ("The Fifth Circuit ruled that even a technical accuracy can be so misleading to the point that it is no longer accurate"); (In Re *American Business Financial Services, Inc. Securities Litigation*, United States District Court, E.D. Pennsylvania, (Jun 2, 2005)).

**44.** Defendant CRAs did not conduct a good-faith and reasonable investigation or reinvestigation, and did not delete or correct the false information, but instead engaged in the industry practice of "re-aging" the dates on the accounts in order to continue reporting the adverse information. Nonetheless, the CRAs cannot defend or claim the reporting of *re-aged* dates could ever be deemed legally valid or accurate based on using their dubiously inaccurate and misleading standard. The CRAs have been on notice since 2017 of their highly errant reporting mechanisms and grossly flawed internal policies and procedures of re-aging accounts on Plaintiff's credit reports.

**45.**  At all times pertinent hereto, the defendants, Experian and Equifax, acted by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of both CRAs respectively.

**46.**  At all times pertinent hereto, the conduct of the defendant CRAs, as well as that of their agents, servants, and/or employees, was egregious, malicious, intentional, willful, reckless, and in habitual and negligent disregard of federal laws and the rights of the Plaintiff.

### [CAUSES OF ACTION]

### COUNT I

**Fair Credit Reporting Act (FCRAS) Violations**
*15 U.S.C. §1681s-2(b)*
*§§ 623(a)(1)(A) and 623(a)(1)(B)*

**47.**  Plaintiff re-alleges and incorporates ¶¶ 6 through 9, and 12 through 33 as if fully set forth herein.

**48.**  The actions, inactions, and deceit of ECMC were willful, negligent and a violation of 15 U.S.C. §1681s-2(b). The defendant CRAs did receive plaintiff's December 1, 2019 dispute and the CRAs did, indeed, notify ECMC of the plaintiff's dispute during the month of December 2019 pursuant to §1681i(a)(2). The CRAs' notification to the furnisher of the plaintiff's dispute triggered the furnisher's duty to investigate such disputes and delete or block the reporting of inaccurate information. However, the furnisher knowingly failed to perform according to their lawful duty to investigate the plaintiff's dispute and to review all relevant information provided by the plaintiff via the CRAs. Instead, ECMC continued transmitting to the CRAs erroneous, inaccurate, and outdated credit file information related to the sixteen SLAs that originated with Citibank as evidenced based on Plaintiff's August 2020 and October 2020 credit reports.

**49.**  ECMC knows the information it furnished was inaccurate and erroneous and the furnisher also had a reasonable cause to believe that the information it supplied to the CRAs was

inaccurate and that it would ultimately lead a reasonable person to doubt the accuracy of the information. As such, this knowledge is a violation of FCRA §§ 623(a)(1)(A) and 623(a)(1)(B) because plaintiff informed ECMC with granular detail in his December 1, 2019 dispute that the DOFD was contradictory to other information referenced on Plaintiff's credit reports and that other items being reported were manifestly inaccurate. ECMC had clear notice of Plaintiff's dispute which laid out the inaccuracies but disregarded such notice and continued to furnish false, misleading, and inaccurate information to the CRAs as evidenced based on Plaintiff's August 2020 and October 2020 credit reports.

**50.**   As a direct and proximate cause of ECMC's willful and negligent failure to perform its duties under the FCRA and conduct a reasonable investigation, Plaintiff has suffered damages, experienced mental anguish, humiliation, embarrassment, and a loss of enjoyment of life.

**51.**   The unlawful actions committed by the defendant furnisher, ECMC, were willful rendering the defendant furnisher liable for actual damages, costs, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and reasonable attorney fees. In the alternative, if the defendants were negligent, Plaintiff is entitled to recover under 15 U.S.C. §1681o for actual damages, costs, and reasonable attorney fees for bringing a successful action.

**COUNT II**

**Fair Debt Collection Practices Act (FDCPA) Violations**
*15 U.S.C. § 1692 et seq.*

**52.**   Plaintiff incorporates by reference the foregoing ¶¶ 6 through 9, 12 through 33 and 48 through 51 as though the same were set forth at length herein.

**53.**   ECMC is a debt collector as defined under 15 U.S.C. § 1692(a)(6) and actively and regularly used the instrumentalities of interstate commerce and the mails with the principal purpose of attempting to unlawfully collect a debt allegedly owed by the plaintiff that was purportedly owed or due to be owed to Citibank.

Original – Civil Complaint
*Owens v. ECMC et al.*

**12**

**54.** The furnisher knew, and it is a fact, that ECMC did not originate, guarantee or service the subject SLAs. ECMC was fully aware that no promissory notes or service agreements existed between the plaintiff and the furnisher as evidence of a debt owed to ECMC. Plaintiff's credit report reflects no scheduled or recent payments made by the plaintiff which precludes the fact that any repayment, forbearance, deferment, or loan rehabilitation agreement was ever established by or for the plaintiff. Therefore, it is without a doubt that ECMC is a debt collector who attempted to collect on a debt for another entity allegedly owed by the plaintiff and that such debt was, at all times prior to the collection efforts by ECMC, in default status prior to the year 2011.

**55.** Plaintiff's prior, unwarranted, communications from ECMC constitutes a violation of 15 U.S. Code § 1692c which states that a debt collector may not communicate with a consumer in connection with the collection of any debt without the prior consent of the consumer. As such, every attempt made by ECMC to contact the plaintiff in an effort to collect on the student loan accounts was a violation of the law.

**56.** Plaintiff has been a victim of "robocalling" tactics and debt collection efforts associated with ECMC contacting the plaintiff, his parents, and peers regarding the subject student loan accounts. Plaintiff has been forced to change his phone number(s) multiple times over recent years due to calls received where the caller either leaves an automated, pre-recorded voice message, or does not immediately identify themselves or pretends to be someone else. These countless occurrences have been very harassing and are in violation of 15 U.S. Code § 1692d(5).

**57.** Plaintiff is entitled to recover actual damages, costs, and attorney's fees from ECMC in an amount pursuant to 15 U.S. Code § 1692k.

## COUNT III

### Federal Rule of Civil Procedure Rule 9(b)

**58.** Plaintiff incorporates by reference the foregoing ¶¶ 6 through 9, 12 through 33, 48

1   through 51, and 53 through 57 as though the same were set forth at length herein.

2   **59.** The furnisher is the custodian of the student loan account documents and information in

3   the form of credit files it transmits to the CRAs. Plaintiff's Experian August 30, 2020 credit report

4   contains no DOFD and it also lists an opening date of April 24, 2015 for all SLAs which is plainly a

5   falsehood. Plaintiff's Equifax October 21, 2020 credit report is riddled with blatant discrepancies

6   related to the subject SLAs and it also contains conflicting DOFD. <see excerpt>

7

8   EQUIFAX                          SEAN OWENS | Oct 21, 2020                          Page 2 of 75

9   ### 5.1 MICHIGAN GUARANTEED STUDENT LO (CLOSED)

10  **Summary**

11  Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's
    calculated by dividing an account's reported balance by its credit limit.

| Account Number |  | Reported Balance | $4,133 |
|---|---|---|---|
| Account Status | COLLECTION | Debt-to-Credit Ratio | Infinity% |
| Available Credit | $0 | | |

**Payment History**

View up to 7 years of monthly payment history on this account. The numbers indicated in each month represent the number of days a
payment was past due; the letters indicate other account events, such as bankruptcy or collections.

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | C | C | C | C | C | C | C | C | C | | | |
| 2019 | | | | | | | | | | C | C | |

View detailed information about this account. Contact the creditor or lender if you have any questions about it.

| High Credit | $2,921 | Owner | INDIVIDUAL |
|---|---|---|---|
| Credit Limit | $0 | Account Type | OTHER |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $4,133 | Date Opened | Nov 01, 2013 |
| Amount Past Due | $4,133 | Date Reported | Oct 05, 2020 |
| Actual Payment Amount | | Date of Last Payment | Mar 01, 2019 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 26 | Delinquency First Reported | Aug 01, 2018 |
| Activity Designator | | Creditor Classification | EDUCATIONAL |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | Education Loan | Date Closed | |
| Date of First Delinquency | Dec 01, 2013 | | |

Original – Civil Complaint
*Owens v. ECMC et al.*

**60.** The preceding excerpt reflects conflicting DOFD dates (i.e., Dec 01, 2013 and Aug 01, 2018). It is obvious that ECMC, in coordination with the CRAs, manipulated this date from its first FCRA compliance date to re-age each student loan account. It is also apparent that the "Date Opened" is erroneous and misleading as the original dates the student loan accounts were opened was more than six years prior (i.e., 2006) to the date reflected of "Nov 01, 2013" and the accounts were opened with Citibank and not "Michigan Guaranteed Student Lo." Furthermore, as a testament to the egregiously flawed credit file information submitted to the CRAs, the preceding excerpt reveals a DOFD date of **Dec 01, 2013**. However, a September 25, 2017 Equifax credit report displays the month of December 2013 as not being delinquent. <see excerpt>

| EQUIFAX | SEAN OWENS \| Sep 25, 2017 | | | | | | | | | Page 2 of 75 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Summary | | | | | | | | | | | |

**Payment History**

View up to 7 years of monthly payment history on this account. The numbers indicated in each month represent the number of days a payment was past due; the letters indicate other account events, such as bankruptcy or collections.

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2015 | 180 | 180 | 180 | | | | | | | | | |
| 2014 | ✓ | ✓ | 90 | 120 | 150 | 180 | 180 | 180 | 180 | 180 | 180 | 180 |
| 2013 | 90 | 120 | 120 | 120 | 120 | | | | | | ✓ | ✓ |
| 2012 | | | | | | | | 90 | 120 | | | |
| 2011 | | | | | | | | | | | | |

✓ Paid on Time          30  30 Days Past Due          60  60 Days Past Due          90  90 Days Past Due          120  120 Days Past Due

Additionally, the furnisher furnishes and the CRAs report that Plaintiff allegedly made timely payments in Nov. and Dec. 2013 which, as to the latter date, conflicts with the October 21, 2020 reporting of the SLAs having a DOFD of Dec. 1, 2013 and Aug. 1, 2018. Altogether, both the furnisher and CRAs have manipulated the credit file information in such a way that is egregiously reckless. It is strikingly obvious they have acted in tandem with each other to intentionally re-age the student loan account information to circumvent the time allowed to report adverse information

according to the FCRA statutory limits.

**61.** ECMC is fully aware of the way it acquired the student loans as collection accounts (i.e., portfolio acquisition or sales, debt buyer, merger, other transfers, etc.). Hence, ECMC knows what the DOFD is for all the SLAs based on the portfolio acquisition documents it received from the prior holder of the SLAs but does not want that information to be accurately submitted. Therefore, ECMC has concealed that critical information to keep the SLAs open so that it can perpetually report the adverse SLA information. Equally, since the defendant CRAs are also custodians of the same information, which includes the transmitted credit files it receives from ECMC and Plaintiff's credit reports over the years, the CRAs are fully aware of what day, month, and year the DOFD for all SLAs were first reported based on its reporting system and method(s) of reporting. A simple retrieval of the plaintiff's credit reports and/or credit files for the relevant years of 2007 through 2010 will reveal the monthly reporting calendars for the respective years. Those calendars reflect whether payments were made on any of the SLAs or whether they were missed and coded as *delinquent* associated with the number of days of delinquency for each reported month. Notably, credit reports from Experian and Equifax for prior, relevant, years sums up and answers the quintessential question of what the DOFD was and ends all inquiries on three of five Counts of Plaintiff's claims.

**62.** The date April 24, 2015 is not the actual date the SLAs were opened by the plaintiff but, instead, the date the SLAs were either transferred, purchased, or assigned by any other debt collector who preceded ECMC. In fact, in prior versions of Plaintiff's credit reports, the original creditor, Citibank, is listed with the actual dates the SLs were opened. However, instead of accurately displaying the original DOFD, ECMC and the CRAs omit this critical date as its illegal method of *re-aging* the SLAs and to continue reporting them beyond the seven and one-half year statutory period.

**63.** By masking the DOFD, ECMC and the CRAs have been able to re-age and illegally transmit and report the adverse, erroneous student loan account information month after month for

many years. Therefore, the furnisher and CRAs have knowingly, willfully, and maliciously engaged in the act of fraud with the intent of deceiving others into believing that said SLAs are accurate and correct as being reported by the credit reporting agencies. As such, ECMC and the CRAs have repeatedly committed acts of fraud which is a violation of Fed. R. Civ. P. 9(b). Further discovery on this claim will reaffirm the plaintiff's good-faith belief.

### COUNT IV

**Negligent and Willful Violations of the**
**Telephone Consumer Protection Act (TCPA)**
*47 U.S.C. § 227 et seq.*

**64.** Plaintiff incorporates by reference the foregoing ¶¶ 6 through 9, 12 through 33, 48 through 51, 53 through 57, and 59 through 63 as though the same were set forth at length herein.

**65.** ECMC habitually engaged in the practice of robocalling and using automatic telephone dialing systems with pre-recorded voice messages to contact and harass the plaintiff, the plaintiff's parents, and the plaintiff's peers without his consent at the plaintiff's landline and cellular telephone numbers and at the same devices for Plaintiff's parents and peers. Defendant's actions were prohibited under 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B). ECMC violated the law by unlawfully engaging in this practice and attempting to collect a debt during the requisite statutory period under the law between the years of 2018 through 2020.

**66.** The above-referenced acts and omissions by ECMC constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 et seq.

**67.** As a result of ECMC's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

**68.** The defendant, ECMC, was put on notice in 2019 about the plaintiff's disputes regarding

1  the sixteen SLAs. Yet, the defendant furnisher continued without pause utilizing automated dialing

2  systems and placing calls with artificial or prerecorded voice messages and calling the plaintiff, his

3  parents, and peers on their respective landline and/or cellular telephone devices without Plaintiff's

4  authorization. The defendant furnisher was notified by the defendant CRAs of Plaintiff's dispute on

5

6  or about December 1, 2019. However, the furnisher did not cease in their collection efforts.

7  Therefore, the defendant furnisher knowingly and willfully broke the law.

8     **69.**  As a result of the furnisher's knowing and/or willful violations of 47 U.S.C. §227 *et seq.*,

9  Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation,

10  pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

11
      **70.**  The statute of limitations for 47 U.S.C. §227 is four (4) years under the four-year federal
12
13  *"catch all"* statute of limitations period set forth in the United States Code. (28 U.S.C. Section

14  1658(a) (2017).[1]

15     **71.**  Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the

16  future.

17                                    **COUNT V**

18                    **Fair Credit Reporting Act (FCRAS) Violations**

19                        *15 U.S.C. § 1681e(b), §§ 1681c (a)(4)(5),*
                          *§ 1681c (c)(1), §1681i (a)(1)(A), §1681i (a)(5)*
20

21     **72.**  Plaintiff incorporates by reference the foregoing ¶¶10-11, 13 through 20, 22 through 26,

22  35 through 46, and 59 through 63 as though the same were set forth at length herein. While some of

23  the facts in said paragraphs are directed at the defendant furnisher, the premise of the facts and

24  arguments are related to Plaintiff's claims based on the investigative duties of each defendant and the

25

26  _____
    [1] "…except as otherwise provided by law, a civil action under an Act of Congress enacted after the date of enactment of
27  this section may not be commenced later than 4 years after the cause of action accrues." (28 U.S.C. Section 1658(a)
    (2017). "Congress enacted this statute of limitations on December 1, 1990, a full year before Congress enacted the TCPA
    on December 20, 1991, so this statute of limitations applies to TCPA claims."
28

complicity of the defendants' interactions related to the subject SLAs.

**73.** Based on the plaintiff's December 2019 consumer dispute with the CRAs, the defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports it published and continues to maintain. After having received multiple disputes from the plaintiff in 2017 and 2019, the CRAs disregarded all pertinent facts and evidence held within the disputes and continued to report false, inaccurate, and conspicuously assembled data it knew to be erroneous. This is evident in and of itself that the CRAs had little to no regard for following any procedure to assure that the preparation and dissemination of Plaintiff's credit reports were being done with accuracy.

**74.** Although the CRAs did notify the defendant furnisher, ECMC, of Plaintiff's December 1, 2019 dispute which triggered ECMC's legal duties to investigate under 15 U.S.C. §1681s-2(b), Experian and Equifax failed to conduct its own investigation within thirty (30) days of Plaintiff's December 1, 2019 dispute -- *as lawfully required* -- and provided no correspondence to the plaintiff of its investigative results which demonstrated a negligent and willful failure to follow reasonable procedures to ensure that it was properly preparing Plaintiff's credit reports with accuracy before publishing. Plaintiff's thorough and formal December 1, 2019 dispute outlined all the issues the CRAs needed to investigate and *cross-examine* based on the vague, formulaic responses being parroted back to them from ECMC during prior online disputes.

**75.** The furnisher failed to acknowledge or respond to the issues succinctly contained in Plaintiff's December 2019 dispute such as:

> ➢ Inaccurate reporting of the DOFD
>
> ➢ Credit report calendar status indicators reflecting *"OK"* for payments being made for the months of April 2012 - July 2012 but then reflecting "90" days late in the following month of August 2012.
>
> ➢ Consistent but problematic pattern of payment activity or *"OK"* status followed by successive 90- or 120-days late entries for the periods of October – December 2012

and November 2013 – February 2014.

➤ Re-aging the student loan account information.

**76.** After the CRAs were formally notified of Plaintiff's consumer dispute in December 2019, the defendant CRAs negligently and knowingly continued to report inaccurate, erroneous, and outdated information which, to the latter, antedated the plaintiff's consumer reports by more than seven (7) years which constitutes a violation of 15 U.S. Code §§ 1681c (a)(4)(5).

**77.** The defendant CRAs continually allowed and published on the plaintiff's credit reports, discrepant information related to the sixteen SLAs whereby they engaged in the habitual practice of *running of reporting periods*. Experian consistently re-aged the original DOFD or last missed payment date of the SLAs, which actually occurred on or about December 2006, and falsely reported the dates from the original DOFD/last missed payment to the date of April 24, 2015. This is a violation of 15 U.S. Code § 1681c(c)(1) as the CRAs must report the true and correct "delinquent or last missed payment" date (month and year) (i.e., "FCRA Compliance Date") that preceded the creditor's action who, in this case, was Citibank.

**78.** Defendant CRAs violated their duty under 15 U.S.C. §1681i (a)(1)(A) to conduct a good faith re/investigation into Plaintiff's disputes. Experian and Equifax did receive the plaintiff's December 1, 2019 dispute and did notify the furnishers of information (i.e., ECMC) about the plaintiff's dispute. However, the CRAs failed to perform their duties as per 15 U.S.C. § 1681e(b) and continued reporting erroneous and inaccurate information that concealed or omitted the DOFD on Plaintiff's credit reports.

**79.** Although this instant case is for claims in the year **2020**, Plaintiff submitted disputes to the CRAs as far back as 2017. However, the December 1, 2019 dispute to the defendant CRAs proved to be a fruitless effort as no *re/investigation* of the disputed information occurred as per §1681i(a)(1)(A). Defendant failed to promptly delete the inaccurate information that was the focus of

the plaintiff's dispute as per §1681i(a)(5). Such inaccurate information remained on the plaintiff's credit reports as evidenced when plaintiff pulled copies of his Experian and Equifax credit reports on August 20, 2020 and November 21, 2020 respectively.

**80.** If the defendant CRAs would have conducted a reasonable, good-faith, reinvestigation into Plaintiff's December 1, 2019 dispute, they should have easily determined that ECMC was providing them with inaccurate credit file data and erroneous information. However, the CRAs failed to perform an investigation altogether as there is no evidence or written correspondence (i.e., emails, letters) that outlines any post investigation results that was sent to the plaintiff from the CRAs as required by law.

**81.** As a direct and proximate cause of Defendant CRAs' negligent failure to perform its duties under the FCRA, Plaintiff has suffered damages, experienced mental anguish, humiliation, embarrassment, and a loss of enjoyment of life.

**82.** The conduct, actions, and inactions of Experian and Equifax were willful rendering the defendants liable for actual damages, costs, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and reasonable attorney fees. In the alternative, if Experian was negligent, Plaintiff is entitled to recover under 15 U.S.C. §1681o for actual damages, costs, and reasonable attorney fees for bringing a successful action.

### [DEMAND FOR JURY TRIAL]

**83.** Plaintiff demands a trial by jury.

### [PRAYER FOR RELIEF]

**84. WHEREFORE,** the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants ECMC, Experian and Equifax based on the following relief requested:

    (a)  Actual damages pursuant to 15 U.S.C. §1681n, and §1681o,

    (b)  Statutory damages pursuant to 15 U.S.C. §1681n, and §1681o,

    **(c)**  Punitive damages pursuant to 15 U.S.C. §1681n,

    **(d)**  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n and §1681o,

    **(e)**  Actual damages pursuant to 15 U.S.C. §1692k,

    **(f)**  Costs and reasonable attorney's fees pursuant to §1692k,

    **(g)**  Statutory damages for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C),

    **(h)**  An award of pre-judgment and post-judgment interest, as provided by law,

    **(i)**  An order enjoining Defendants from further violations of the statutes pursuant to 47 U.S.C. §227 et seq, of which the violations have been detailed extensively in the Complaint,

    **(j)**  Such other and further relief as may be deemed necessary, just, and proper by this Court.

Respectfully submitted,

*Sean Owens*               Dated:  August 29th, 2022

Sean Owens
Plaintiff in Pro Per


### CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2022, the foregoing document was filed with the Clerk of the Court and served upon the defendants via U.S. First Class mail, premium service, along with the appropriate summons issued from the Clerk of the Court.

*Sean Owens*               Dated:  August 29th, 2022

Sean Owens